1  Michael K. Friedland (SBN 157,217)
   mfriedland@kmob.com
2  Lauren Keller Katzenellenbogen (SBN 223,370)
   lkeller@kmob.com
3  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
4  Irvine, CA  92614
   Phone:     (949) 760-0404
5  Facsimile:  (949) 760-9502

6  Attorneys for Defendant and Counterclaimant,
   COMPAÑÍA MEXICANA DE AVIACIÓN, S.A.
7  DE C.V. D/B/A MEXICANA AIRLINES

8

9

10             IN THE UNITED STATES DISTRICT COURT

11         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12  BIGFOOT VENTURES, LLC,                  ) Civil Action No.:
                                            ) 08 CV 1357 BEN (JMA)
13           Plaintiff/Counterdefendant,    )
                                            ) **MEMORANDUM OF POINTS**
14      v.                                  ) **AND AUTHORITIES IN**
                                            ) **SUPPORT OF DEFENDANT'S**
15  COMPAÑÍA MEXICANA DE                    ) **MOTION FOR PARTIAL**
    AVIACIÓN, S.A. DE C.V. D/B/A            ) **SUMMARY JUDGMENT**
16  MEXICANA AIRLINES,                      ) **(REDACTED VERSION)**
                                            )
17           Defendant/Counterclaimant.     ) Date:  May 10, 2010
                                            ) Time:  10:30 a.m.
18                                          ) Courtroom:  3
                                            ) Honorable Robert T. Benitez
19  _____ )

20

21

22

23

24

25

26

27

28

                                                    08cv1357

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page No.

I.      INTRODUCTION ......................................................................... 1

II.     BACKGROUND ........................................................................... 3

III.    ARGUMENT ................................................................................ 6

        A.      Summary Judgment Standard ........................................ 6

        B.      Bigfoot Has No Support For Its Affirmative Defense
                of Unclean Hands ........................................................... 7

        C.      Bigfoot Has No Evidence To Support Its Affirmative
                Defense of Laches ......................................................... 8

        D.      Bigfoot Has No Evidence To Support Its Affirmative
                Defense of Acquiescence ............................................ 10

        E.      Bigfoot Has No Evidence To Support Its Affirmative
                Defense of Estoppel ..................................................... 11

        F.      Bigfoot Has No Evidence To Support Its Affirmative
                Defense of Fair Use ..................................................... 12

IV.     CONCLUSION .......................................................................... 13

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Page No.</u>

3

4

*Brother Records, Inc. v. Jardine,*
  318 F.3d 900 (9th Cir. Cal. 2003) ...................................................7, 8, 12

5

6

*Cairns v. Franklin Mint Co.,*
  292 F.3d 1139 (9th Cir. 2002)...............................................................12

7

8

*California State Bd. of Equalization v. Coast Radio Prods.,*
  228 F.2d 520 (9th Cir. 1955)..................................................................11

9

10

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)...............................................................................7

11

12

*Citizens Fin. Group, Inc. v. Citizens Nat'l Bank,*
  383 F.3d 110 (3d Cir. 2004) ....................................................................7

13

14

*Couveau v. Am. Airlines, Inc.,*
  218 F.3d 1078 (9th Cir. 2000).................................................................9

15

16

*Danjaq LLC v. Sony Corp.,*
  263 F.3d 942 (9th Cir. 2001)..................................................................9

17

18

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.,*
  905 F. Supp. 1403 (E.D. Cal. 1994) ......................................................10

19

20

*Eliminator Custom Boats v. Am. Marine Holdings, Inc.,*
  2007 U.S. Dist. LEXIS 96414 (C.D. Cal. Nov. 5, 2007) ......................10

21

22

*Express Diagnostics Int'l, Inc. v. Tydings,*
  2009 U.S. Dist. LEXIS 5754 (*17 N.D. Cal. Jan. 15, 2009) ................................................................................................11

23

24

*Grand Canyon Trust v. Tuscon Elec. Power Co.,*
  391 F.3d 979 (9th Cir. 2004)..................................................................9

25

26

27

28

TABLE OF AUTHORITIES

(continued)

Page No.

*Internet Specialties West, Inc. v. Milon-Digiorgio Enters.,*
    559 F.3d 985 (9th Cir. 2009).......................................................2, 8, 9, 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
    210 F.3d 1099 (9th Cir. 2000).........................................................7

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and*
*Sports Physical Therapy, P.C.,*
    314 F.3d 62 (2d Cir. 2002)...............................................................10

*Tandy Corp. v. Malone & Hyde, Inc.,*
769 F.2d 362 (6th Cir. 1985)............................................................9

OTHER AUTHORITIES

Fed. R. Civ. P. 33.................................................................................6

 Fed. R. Civ. P. 37...............................................................................8

Fed. R. Civ. P. 56...............................................................................7

1        Defendant Compañía Mexicana de Aviación S.A. de C.V. d/b/a Mexicana

2  Airlines ("Mexicana") respectfully submits this Memorandum of Points and

3  Authorities in Support of its Motion for Partial Summary Judgment.

4  **I.  INTRODUCTION**

5        For more than 85 years, Mexicana has been providing air transportation

6  services.  It is the leading transportation company between Mexico and the

7  United States.  In the 1950s, Mexicana began selling vacation packages

8  including hotels, air fare, and ground transportation, under the trademark

9  "VTP."  Mexicana has continuously used the VTP mark since that time, and has

10  extensively marketed its VTP products and services.    In just the last three

11  years, Mexicana has sold VTP travel packages worth more than ███████████.

12  Accordingly, consumers, particularly Latin-American consumers, widely

13  recognize the VTP trademark and associate it with Mexicana.

14        On ██████████, Bigfoot purchased the domain name vtp.com ███████

15  ████████████████████ from NameMedia, a company that advertises

16  itself as "a marketplace for premium domain names."  (Katzenellenbogen Decl.

17  Ex. A (NameMedia webpage).)  NameMedia had advertised the vtp.com domain

18  for sale for $148,000; ████████████████████████████████████

19  ████████████████████.  (Katzenellenbogen Decl. Ex. E (NameMedia

20  advertisement), Ex. C (Bauernfeind Dep. at 37).)  ████████████████████

21  ████████████████████████████████████████████████████

22  ██████████████████  Bigfoot's inventory of two and three letter domain

23  names (which they refer to as "ll.com" and "lll.com" domains) includes ██████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████

27  / / /

28  / / /

1　▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

2　▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

3　　　　One day after Bigfoot purchased the vtp.com domain name, Mexicana

4　initiated this dispute by filing a complaint with the National Arbitration Forum

5　("NAF") pursuant to the ICANN Uniform Domain Name Dispute Resolution

6　Policy ("UDRP") seeking transfer of the vtp.com domain name to Mexicana as

7　owner of the VTP trademark.  Mexicana prevailed in the UDRP proceeding, and

8　NAF ordered that the vtp.com domain be transferred to Mexicana.  Bigfoot then

9　filed this lawsuit in an attempt to avoid the transfer.

10　　　　In response to Mexicana's claims for trademark infringement and anti-

11　cybersquatting, Bigfoot has asserted the affirmative defenses of unclean hands,

12　laches, acquiescence, estoppel, and fair use.  Bigfoot has the burden of proof on

13　each of these defenses, and to survive summary judgment, Bigfoot must set

14　forth evidence showing the required elements of each defense.  Bigfoot cannot

15　meet its burden on any of these defenses.

16　　　　Bigfoot's unclean hands defense requires evidence that Mexicana

17　committed fraud or misconduct relating to the VTP trademark or its claims in

18　this lawsuit.  Yet, there is no evidence of any fraud or misconduct by Mexicana.

19　Similarly, the defenses of laches, acquiescence, and estoppel all require

20　evidence of delay by Mexicana in bringing this dispute and prejudice to Bigfoot

21　as a result of such delay.  Bigfoot cannot show any evidence of delay, as

22　Mexicana brought this dispute only one day after Bigfoot purchased the vtp.com

23　domain name.  Moreover, even if Bigfoot could show delay, it cannot show that

24　it was in any way prejudiced, because it has not even attempted to build up any

25　business in connection with the VTP name.  *See Internet Specialties West, Inc.*

26　*v. Milon-Digiorgio Enters*., 559 F.3d 985, 991-992 (9th Cir. 2009) ("Laches is

27　meant to protect an infringer whose efforts have been aimed at 'build[ing] a

28　valuable business *around its trademark*' and 'an important reliance *on the*

*publicity of [its] mark*.'")(emphasis added).  Finally, the defense of fair use requires a showing that the defendant is using the mark in a descriptive rather than a trademark sense.  Bigfoot cannot make any such showing, as VTP is in no way descriptive of any product or service offered by Bigfoot.  Because there is no evidence to support any of them, this Court should grant summary judgment rejecting Bigfoot's affirmative defenses of unclean hands, laches, acquiescence, estoppel, and fair use.

## II.  BACKGROUND

Mexicana has provided air transportation services to and from Mexico and Latin America for more than 85 years. (Katzenellenbogen Decl. Ex. D (Goytortua Dep. 103:19).)  Mexicana is the leading transportation company between Mexico and the United States and has won numerous awards for its travel services and for having the best airline website in the Mexico and Latin America region.  (Goytrotua Decl. ¶ 2.)  Since the 1950s, Mexicana has sold vacation packages, which include hotel, air fare, ground transportation, and tours, in connection with its trademark "VTP." (*Id.* ¶ 3.) Mexicana first offered its VTP services in Mexico and soon expanded its VTP services to offer packages in Central America, South America, the Caribbean, and the United States. (*Id.*)  Shown below are two examples of Mexicana's advertisements for its VTP products and services:

/ / /

/ / /

/ / /

 

(*Id.* Ex. 1.)

Mexicana has continuously used its VTP mark in connection with its travel packages, air travel, and travel booking services in the United States since at least as early as 1977.  (*Id.* ¶ 4.)  Mexicana also has extensively marketed its VTP products and services.  (*Id.* Ex. 1.)  As a result, the public has come to recognize the VTP mark and to associate it with Mexicana.  (*Id.* ¶ 4.)  In the last three years alone, Mexicana has sold travel packages worth more than ▮▮▮▮▮▮ in connection with its VTP mark.  (*Id.*)  The U.S. Trademark Office issued the registration of the VTP trademark to Mexicana on July 19, 2005 as Registration No. 2,970,100.  (Katzenellenbogen Decl. Ex. B.)

One of the ways that Mexicana sells its airline tickets and vacation packages is through its numerous websites.  (*Id.* ¶ 6.)  Mexicana's VTP websites include     vtpmexicana.com,     vtpsalud.com,     mexicanavtp.com, vtpsweepstakes.com,   vtp-vacationtravelplus.com,   vacationtravelplus.com, mexicanavtp.mx, vtp.mx, mexicanavtp.com.mx, and vtp.com.mx.  (*Id.*)  Due to

1   the internet's increasing popularity and Mexicana's extensive internet marketing

2   campaigns, each year a higher percentage of Mexicana's sales are through the

3   internet.  (*Id.*)

4         Bigfoot's predecessor, NameMedia, registered the "vtp.com" domain

5   name on January 21, 1998, decades after Mexicana began using the VTP mark.

6   (Katzenellenbogen Decl. Ex. J, Annex A.)  As recently as April 27, 2008, the

7   "vtp.com" website prominently displayed hyperlinked text stating "The domain

8   name vtp.com is for sale."  (Katzenellenbogen Decl. Ex. M.) ████████████████

9   █████████████████████████████████████████████████████████████████████████

10  ██████  (Katzenellenbogen Decl. Ex. F (NameMedia Dep. at 18.)) ████████████

11  █████████████████████████████       *Id.*

12        Bigfoot purchased the vtp.com domain from NameMedia on ████████

13  ████████████████████████████████████████████.  (Katzenellenbogen Decl.

14  Ex. G (Bauernfeind Dep. Ex. 26).)  Bigfoot's inventory of two and three letter

15  domain names (which they refer to as "ll.com" and "lll.com" domains) ████████

16  █████████████████████████████████████████████████████████████████████████

17  (*Id.* Ex. H (Bigfoot's Supp. Response to Interrogatory No. 9), Ex. C

18  (Bauernfeind Dep. at 115-116).) ███████████████████████████████████████

19  █████████████████████████████████████████████████████████████████████████

20  █████████████  (*Id.* Ex.C (Bauernfeind Dep. at 51-52), Ex.  I (Berkman Dep. at

21  41-42).) ██████████████████████████████████████████████████████████████

22  ████████████████████████████████████  (*Id.* Ex. C (Bauernfeind Dep. at 31-33, 134-

23  135), Ex. I (Berkman Dep. at 60).) ████████████████████████████████

24  ████████████  (*Id.* Ex. C (Bauernfeind Dep. 33).)

25  / / /

26  _____

27      [1] NameMedia's subsidiaries BuyDomains.com and Rare Names buy and sell domain names on behalf of NameMedia.  (Katzenellenbogen Decl. Ex. F (NameMedia Dep. at 15-16, 18).)  For simplicity NameMedia as used herein refers to NameMedia and its subsidiaries.

28

On May 29, 2008, Mexicana filed its UDRP complaint seeking transfer of the vtp.com domain name to Mexicana as owner of the VTP trademark. (Katzenellenbogen Decl. Ex. J.) Mexicana prevailed in the UDRP proceeding, and the NAF ordered the vtp.com domain name to be transferred to Mexicana. (*Id.* Ex. K.) To avoid the order, Bigfoot filed this lawsuit on July 28, 2008 seeking declaratory judgment that Bigfoot is not required to transfer the vtp.com domain name to Mexicana. (Complaint, Dkt. # 1, 7/28/08.) Mexicana asserted counterclaims against Bigfoot for infringement of Mexicana's "VTP" trademark and cybersquatting. (Amended Answer, Dkt. # 23, 4/8/09.)

In response to Mexicana's counterclaims, Bigfoot asserted several affirmative defenses, including unclean hands, laches, acquiescence, estoppel, and fair use. (Bigfoot's Reply to Counterclaims, Dkt. # 25, 4/27/09, at 7.) Bigfoot has no support for these defenses. Mexicana served Bigfoot with interrogatories seeking Bigfoot's factual and legal bases for its affirmative defenses. (Katzenellenbogen Declaration Ex. L (Interrogatories Nos. 6-7)). Bigfoot responded to these interrogatories by stating only that the information sought may be ascertained in Bigfoot's response to the UDRP complaint. *Id.* Bigfoot also responded by stating that in accordance with Fed. R. Civ. P. 33(d), Bigfoot would search for and produce documents from which Mexicana could ascertain the information requested. Bigfoot's UDRP response said nothing about these affirmative defenses and set forth no facts or evidence to support them. (*Id.* Ex. N.) Moreover, Bigfoot did not identify any documents or evidence to provide any basis for its affirmative defenses.

### III. ARGUMENT

#### A.    Summary Judgment Standard

A moving party is entitled to summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party's burden may be discharged by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908-909 (9th Cir. Cal. 2003) (quoting *Celotex* 477 U.S. at 317). As set forth below, Bigfoot cannot meet its burden of providing evidence to support the essential elements of its affirmative defenses of unclean hands, laches, acquiescence, estoppel, and fair use. Because Bigfoot has the burden of proof on these affirmative defenses, Bigfoot's lack of evidence is fatal, and this Court should enter summary judgment against Bigfoot on these affirmative defenses.

**B.**   **Bigfoot Has No Support For Its Affirmative Defense of Unclean Hands**

To prevail on an unclean hands defense, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003). "Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 129 (3d Cir. 2004). An unclean hands defense is properly rejected where the defendant

1  fails to point to any evidence that the plaintiff acted in any fraudulent or
2  deceitful manner.  *See Brother Records*, 318 F.3d at 909.

3          Bigfoot's unclean hands defense must fail because Bigfoot cannot meet
4  its burden of providing evidence demonstrating that Mexicana acted in a
5  fraudulent or deceitful manner relating to its claims of infringement of the
6  "VTP" trademark and its anti-cybersquatting claims.  In response to Mexicana's
7  interrogatory seeking Bigfoot's bases for its unclean hands defense, Bigfoot
8  provided no explanation or evidence of any kind to support its allegation that
9  Mexicana acted in a fraudulent or deceitful manner.  (Katzenellenbogen Decl.
10  Ex. L.)  Pursuant to Fed. R. Civ. P. 37(c)(1), Bigfoot cannot now rely on a new
11  theory that it failed to disclose in response to Mexicana's interrogatory seeking
12  the basis for Bigfoot's unclean hands defense.   Accordingly, Bigfoot cannot
13  present the evidence required to meet the essential elements of the defense of
14  unclean hands, and this Court should grant summary judgment rejecting
15  Bigfoot's unclean hands defense.

16  **C.**     **Bigfoot Has No Evidence To Support Its Affirmative Defense of**
17  **Laches**

18          To establish laches, a defendant must prove each of two required
19  elements: 1) that the plaintiff unreasonably delayed in bringing suit, and 2) that
20  the defendant was prejudiced by the delay.  *Internet Specialties West*, 559 F.3d
21  at 990.  Bigfoot's laches defense cannot survive summary judgment because
22  Bigfoot cannot meet its burden on either of these two elements.

23          First, Bigfoot's laches defense fails because Bigfoot cannot show that
24  Mexicana unreasonably delayed in taking action against Bigfoot.  Mexicana
25  brought its UDRP action against Bigfoot just one day after Bigfoot purchased
26  the vtp.com domain name.  (Katzenellenbogen Decl. Exs. J, G.)   "The
27  limitations period for laches starts when the plaintiff knew or should have
28  known about its potential cause of action."  *Internet Specialties*, 559 F.3d at

990.  Mexicana had no cause of action against Bigfoot until Bigfoot purchased the vtp.com domain name.  Accordingly, the limitations period ran only one day before Mexicana brought its action against Bigfoot, and one day cannot be unreasonable delay.

Bigfoot cannot rely on any alleged delay during NameMedia's ownership of the vtp.com domain name because the transfer from NameMedia to Bigfoot involved only the domain name and no transfer of any business or associated goodwill.  *See Tandy Corp. v. Malone & Hyde, Inc*., 769 F.2d 362, 367 (6th Cir. 1985) ("For purposes of laches an assignee of a trademark can tack on the period during which the assignor used the mark, . . . , but only when the mark is assigned in conjunction with the sale of the goodwill of the business to which it is attached.")  Accordingly, that Bigfoot owned the domain for only one day prior to this dispute is fatal to Bigfoot's laches defense.

Even if Bigfoot could show that Mexicana unreasonably delayed, Bigfoot's laches defense would still fail for the independent reason that Bigfoot cannot show that it was prejudiced by any delay by Mexicana.  To establish laches, "[u]nreasonable delay . . . is not enough:  '[I]n addition, laches requires prejudice.'"  *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 955 (9th Cir. 2001) (quoting *Couveau v. Am. Airlines, Inc*., 218 F.3d 1078, 1084 (9th Cir. 2000)); *see also Grand Canyon Trust v. Tuscon Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004) ("A lengthy delay, even if unexcused, that does not result in prejudice does not support a laches defense.")

In the trademark context, an infringer must show that during the period of delay, it built a valuable business around the trademark.  An infringer cannot meet its burden of showing prejudice merely by presenting evidence that it made expenditures in connection with the infringed name.  *See Internet Specialties*, 559 F.3d at 991.  "Laches is meant to protect an infringer whose efforts have been aimed at 'build[ing] a valuable business *around its trademark*'

1  and 'an important reliance *on the publicity of [its] mark.*'" *Id.* at 992 (emphasis

2  added).  Thus, the question is whether the infringer "developed an identity as a

3  business based on its mark." *Id.*

4      Here, Bigfoot has not suffered any prejudice.  ██████████████████

5  ████████████████████████████████████████████████████████████████

6  (Katzenellenbogen Decl. Ex. C (Bauernfeind Dep. at 31-33, 134-135).)

7  ████████████████████████████████████████████████████████████████

8  ████████████████████  (Katzenellenbogen Decl. Ex. C (Bauernfeind Dep.

9  at 33).)  To the extent that Bigfoot asserts that it is prejudiced due to its payment

10  to NameMedia for the purchase price of the vtp.com domain name, such an

11  expenditure, without any efforts to build a business around the domain, does not

12  constitute the prejudice required for laches.  *See Internet Specialties*, 559 F.3d at

13  991.    Accordingly,  this  Court  should  enter  summary  judgment  rejecting

14  Bigfoot's laches defense.

15  **D.**    **Bigfoot Has No Evidence To Support Its Affirmative Defense of**

16      **Acquiescence**

17      Acquiescence  requires  both  elements  of  laches,  namely  unreasonable

18  delay and prejudice.  *Eliminator Custom Boats v. Am. Marine Holdings, Inc.*,

19  2007 U.S. Dist. LEXIS 96414 (C.D. Cal. Nov. 5, 2007); *ProFitness Physical*

20  *Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy, P.C.*, 314

21  F.3d 62, 67 (2d Cir. 2002).  Accordingly, for the same reasons that Bigfoot's

22  laches defense fails, its acquiescence defense must also fail.

23      Bigfoot's  acquiescence  defense  fails  for  another  reason  as  well.

24  Acquiescence requires "affirmative conduct [of the plaintiff] inducing the belief

25  that it has abandoned its claim against the alleged infringer." *E. & J. Gallo*

26  *Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994).

27  The affirmative defense of acquiescence "may be employed 'only in those cases

28  where the trademark owner, by affirmative word or deed' conveys its consent to

another with respect to use of the trademark." *Express Diagnostics Int'l, Inc. v. Tydings*, 2009 U.S. Dist. LEXIS 5754 *17 (N.D. Cal. Jan. 15, 2009).

Bigfoot cannot show any affirmative conduct by Mexicana that could have induced the belief that it had abandoned its claim of trademark infringement or had consented to Bigfoot's use of the VTP trademark. Mexicana brought this dispute against Bigfoot only one day after Bigfoot purchased the vtp.com domain name, and ███████████████████ ████████ (Katzenellenbogen Decl. Ex. C (Bauernfeind Dep. 31-33, 134-135).) Further, in response to Mexicana's interrogatory seeking the bases for Bigfoot's acquiescence defense, Bigfoot failed to identify any affirmative act of consent or abandonment by Mexicana. (Katzenellenbogen Decl. Ex. L.) Because there was no affirmative act of abandonment, Bigfoot also cannot show that it relied to its detriment on any such affirmative act. Thus, Bigfoot cannot meet its burden of establishing the elements needed to prove acquiescence, and this Court should enter summary judgment against Bigfoot on its defense of acquiescence.

**E.   Bigfoot Has No Evidence To Support Its Affirmative Defense of Estoppel**

Bigfoot similarly cannot provide any evidence of the elements required to prevail on its estoppel defense. Estoppel requires that "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *California State Bd. of Equalization v. Coast Radio Prods.*, 228 F.2d 520, 525 (9th Cir. 1955).

In order to avoid summary judgment on its estoppel defense, Bigfoot must provide evidence that: (1) Mexicana knew the facts, *i.e.* that Bigfoot intended to purchase the vtp.com domain name; (2) Mexicana intended that its

1  conduct be acted on; (3) Bigfoot was ignorant of the true facts; and (4) Bigfoot
2  relied on Mexicana's conduct to its injury.  *Id.*  Bigfoot cannot establish these
3  elements. ███████████████████████████████
4  ████████████████████████  (Katzenellenbogen Decl. Ex. C
5  (Bauernfeind Dep. 39-40).)  Thus, Mexicana could not have known that Bigfoot
6  intended to purchase the vtp.com domain name.  Moreover, as discussed above,
7  there was no affirmative conduct by Mexicana upon which Bigfoot could have
8  acted or relied.  Accordingly, Bigfoot cannot provide any evidence proving the
9  required elements for estoppel, and this Court should enter summary judgment
10  against Bigfoot on its equitable estoppel defense.

11  **F.  Bigfoot Has No Evidence To Support Its Affirmative Defense of Fair**
12  **Use**

13       To succeed on its fair use defense, Bigfoot must prove the following three
14  elements: (1) Bigfoot's use of the term is not as a trademark or service mark; (2)
15  Bigfoot uses the term fairly and in good faith; and (3) Bigfoot uses the term
16  only to describe its goods or services.  *Cairns v. Franklin Mint Co.*, 292 F.3d
17  1139, 1151 (9th Cir. 2002).  The fair use defense "applies only to marks that
18  possess both a primary meaning and a secondary meaning – and only when the
19  mark is used in its primary descriptive sense rather than its secondary trademark
20  sense."  *Brother Records*, 318 F.3d at 905.

21       Bigfoot's fair use defense must fail because Bigfoot cannot show that it is
22  using VTP is in a descriptive sense rather than a trademark sense.  The mark
23  VTP does not have a descriptive meaning separate from its trademark meaning.
24  Moreover, VTP is not in any way descriptive of any goods or services provided
25  by Bigfoot.  Again, in response to Mexicana's interrogatory seeking the basis
26  for Bigfoot's fair use defense, Bigfoot provided no explanation as to how its use
27  of VTP could be in a descriptive rather than trademark sense.
28  / / /

1   (Katzenellenbogen Decl. Ex. L.)  Accordingly, this Court should enter summary

2   judgment against Bigfoot on the defense of fair use.

3                          IV.  **CONCLUSION**

4   Bigfoot has provided no evidence to support the essential elements for its

5   affirmative defenses of unclean hands, laches, acquiescence, estoppel and fair

6   use.    Accordingly, Mexicana respectfully requests that this Court grant

7   Mexicana's motion for partial summary judgment.

8                               Respectfully submitted,

9                               KNOBBE, MARTENS, OLSON & BEAR, LLP

10

11   Dated: March 30, 2010        By: s/Lauren Keller Katzenellenbogen
                                     Michael K. Friedland
12                                   Lauren Keller Katzenellenbogen

13                               Attorneys for Defendant and Counterclaimant,
                                 COMPAÑIA MEXICANA DE AVIACIÓN, S.A.
14                               DE C.V. D/B/A MEXICANA AIRLINES

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -13-                        08cv1357

**PROOF OF SERVICE**

I, Lauren Keller Katzenellenbogen, certify that on March 30, 2010, I presented the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (REDACTED VERSION)** to the Clerk of Court for filing and uploading to the ECF system which will send notification to the following:

Marc G. Reich
REICH RADCLIFFE, LLP
4675 MacArthur Court, Suite 550
Newport Beach, CA  92660
Telephone:  (949) 975-0512
Facsimile:  (949) 975-0514

Richard E. Parke
FROMMER LAWRENCE & HAUG, LLP
745 Fifth Avenue
New York, NY  10151
Telephone:  (212) 588-0800
Facsimile:  (212) 588-0500

I declare under penalty of perjury that the foregoing statements are true and correct.

s/Lauren Keller Katzenellenbogen
Lauren Keller Katzenellenbogen
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

Attorneys for Defendant and
Counterclaimaint,
Compañía Mexicana de Aviación, S.A. de
C.V. d/b/a Mexicana Airlines

8801216_1
033010