FILED

2010 JUL 23 PM 12: 11

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIGFOOT VENTURES, LLC,<br><br>            Plaintiff/Counterdefendant,<br><br>vs.<br><br>COMPAÑÍA MEXICANA DE AVIACIÓN, S.A. DE C.V. D/B/A MEXICANA AIRLINES,<br><br>            Defendant/Counterclaimant. | CASE NO. 08CV1357 BEN (JMA)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Dkt. Nos. 45-46] |

### INTRODUCTION

Defendant Compañía Mexicana de Aviacíon S.A. de C.V. D/B/A Mexicana Airlines's ("Mexicana") motion for partial summary judgment is before the Court. Dkt. Nos. 45-46. Mexicana moves for partial summary judgment on Plaintiff Bigfoot Ventures, LLC's ("Bigfoot") affirmative defenses to Mexicana's counterclaims. As discussed below, Bigfoot has not met its burden of producing evidence and, therefore, the Court grants Mexicana's motion for partial summary judgment on all affirmative defenses.

### BACKGROUND

Since the 1950s, Mexicana has sold vacation packages, including hotel, air fare, ground transportation, and tours, in connection with its trademark "VTP." Def.'s Mot. for Partial Summ.

J., Goytortua Decl., ¶ 3. Since 1977, Mexicana has used the VTP mark in connection with these services, selling airline tickets and vacation packages through its websites. Goytortua Decl., ¶¶ 4 and 6. On July 19, 2005, the United States Patent and Trademark Office issued a registration for Mexicana's VTP mark, Registration No. 2,970,100. Def.'s Mot. for Partial Summ. J., Katzenellenbogen Decl. ¶ 3, Ex. B, 5. Mexicana has registered a large number of domain names, many of which have VTP as part of the name. Goytortua Decl. ¶ 6.

On January 21, 1998, Rare Names, a subsidiary of NameMedia, registered the domain name "vtp.com."[1] Katzenellenbogen Decl. Ex. J, Annex A, 75. On July 21, 1998, Mexicana registered the domain name "vtp.com.mx," approximately nine years before Mexicana initiated the arbitration that led to the instant action. Parke Decl. Ex. G, 1. Mexicana's witness, Jorge Goytortua, on topics concerning vtp.com and vtp.com.mx domain names, testified that Mexicana was interested in getting the vtp.com domain name before 2003. Parke Decl. Ex. F, Goytortua Dep. 24-25. Goytortua also testified that Mexicana made an inquiry concerning the availability of vtp.com in the 2003-2005 time frame, when the "VTP product" was being relaunched in the United States and Canada. *Id.*

On December 1, 2007, a Mexicana employee discovered travel-related advertisements for travel to Mexico on vtp.com. Goytortua Decl. ¶ 7. On May 29, 2008, Mexicana filed a complaint against NameMedia with the National Arbitration Forum ("NAF") pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") adopted by the Internet Corporation for Assigned Names and Numbers. In its complaint, Mexicana sought to have vtp.com transferred to Mexicana. Katzenellenbogen Decl. Ex. J, 71. On May 30, 2008, upon learning that NameMedia had sold the domain name vtp.com to Bigfoot, Mexicana submitted a complaint to the NAF against Bigfoot seeking the same transfer. Katzenellenbogen Decl., Ex. K, 147-48. The NAF arbitrator found in favor of Mexicana and issued a decision directing the transfer of vtp.com to Mexicana. *Id.* at 152.

Bigfoot then commenced the instant action against Mexicana within the ten-day period

---

[1] NameMedia's subsidiaries BuyDomains.com and Rare Names buy and sell domain names on behalf of NameMedia. Katzenellenbogen Decl. Ex. F (Zilinek, NameMedia Dep. at 15-16, 18). NameMedia will herein refer to NameMedia and its subsidiaries.

required by the UDRP, which halted transfer of the domain name.[2] Mexicana asserted counterclaims under the Trademark Act of 1946 ("Lanham Act") for Trademark Infringement under 15 U.S.C. § 1114, False Designation of Origin under 15 U.S.C. § 1125(a), and Anticybersquatting under 15 U.S.C. § 1125(d)(1)(A), and related California state law claims. Def.'s Am. Answer and Countercl. Bigfoot filed affirmative defenses of unclean hands, acquiescence, estoppel, fair use, and laches against Mexicana's counterclaims. Pl.'s Reply to Am. Answer and Countercl., ¶ 52-56. Mexicana filed the instant motion for partial summary judgment as to all affirmative defenses. Def. Mot. for Partial Summ. J. 1, 7-13. Bigfoot then filed an opposition to Mexicana's motion as to the laches defense only. Since Bigfoot does not oppose Mexicana's motion as to the unclean hands, acquiescence, estoppel, and fair use defenses, as to those defenses partial summary judgment will be granted. Pl.'s Opp. to Def.'s Mot., p. 1. Therefore, this Court confines its discussion to the affirmative defense of laches.

## DISCUSSION

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden has "two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Celotex Corp.* 477 U.S. at 330. The court need not determine whether the moving party has met its ultimate burden of persuasion "unless and until the [c]ourt finds that the moving party has discharged its initial burden of production." *Id.* at 330 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-161 (1970).

---

[2] The mandatory administrative proceeding requirements set forth by the URDP policy do not prevent parties from submitting the dispute to a court of competent jurisdiction for independent resolution. If an Administrative Panel decides that a domain name registration should be canceled or transferred, the Panel will wait ten business days to implement that decision unless it receives official court documentation that a lawsuit has commenced. No further action will be taken by the Panel until it receives evidence of a resolution, evidence that the lawsuit has been dismissed or withdrawn, or a copy of a court order with further direction.

The moving party bears the initial burden of demonstrating summary judgment is proper by either providing evidence that shows there is no genuine issue of material fact, or by stating the absence of a genuine issue of material fact. *Adickes*, 398 U.S. at 159; *Celotex Corp.*, 477 U.S. at 322. An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue is material only if it "affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

A moving party can meet its initial burden of production by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden of production, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp.*, 477 U.S. at 322). If no genuine issue of material fact exists, then summary judgment is appropriate. *Id.* at 323-24.

### B. Laches

Bigfoot has raised the defense of laches to Mexicana's Lanham Act and related California state law counterclaims. It is established that laches can defeat an otherwise valid claim under the Lanham Act when a trademark holder knowingly allowed the infringing mark to be used without objection for a long period of time. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000); *Brookfield Comm., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999). A prima facie case for laches requires a showing: (1) the party bringing the claim unreasonably delayed in doing so; and (2) the party asserting laches would suffer prejudice caused by the delay if the court allowed the claim to be brought. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

A laches defense embodies the principle that "one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now Inc.*, 304 F.3d 829, 835

(quoting *Piper Aircraft, Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984)); *see also Internet Specialties West, Inc. v. Milon-DiGiorgio Enter., Inc.*, 559 F.3d 985, 989-90 (9th Cir. 2009) ("a [party] cannot sit on the knowledge that another company is using its trademark, and then later come forward and seek to enforce its rights"). Laches is an equitable doctrine and its application depends on the facts of the particular case. *Brown v. Cont'l Can Co.*, 765 F.2d 810, 814 (9th Cir. 1985).

### 1. Statute of Limitations for Purposes of a Laches Defense

The Lanham Act contains no specific statute of limitations. "When a federal statute lacks a specific statute of limitations, we generally presume that Congress intended to borrow the limitations period from the most closely analogous action under state law." *Jarrow*, 304 F.3d at 835. Mexicana's federal Lanham Act counterclaims, as well as its California common law trademark infringement claim, are governed by California's four-year statute of limitations applicable to state trademark claims. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006). Neither party disputes the imputation of the four-year statute of limitations period. However, the parties do dispute when the statute of limitations should begin to run.

Laches is an equitable defense. It is distinct from the statute of limitations which is a creature of law. *Jarrow*, 304 F.3d at 835. While laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law. *Id.* If a party asserts its claims outside of the analogous limitations period, there is a presumption in favor of laches, but if a party files claims inside that period, there is a strong presumption against laches. *Id.* at 835-36; *see also Miller*, 454 F.3d at 997. As to whether Mexicana delayed in bringing the trademark infringement claims, the Court "must first decide whether [the claims] were filed within the applicable [four-year] statute of limitations period, thereby triggering the presumption against laches." *Internet Specialties West*, 559 F.3d at 990. The analogous limitations period begins to run from the time Mexicana knew or should have known about its cause of action. 15 U.S.C. § 1125(a); *see also Jarrow*, 304 F.3d at 838.

### a. Bigfoot Has Not Met Its Burden to Show Undue Delay

The Court considers the following in determining whether a party's delay in bringing a

1  claim is unreasonable: (a) the length of the delay, measured from the time the party knew or
2  should have known about its potential cause of action; and (b) whether the party's delay was
3  reasonable in light of the statute of limitations period, including whether the party has a legitimate
4  excuse for the delay. *Miller*, 454 F.3d at 997. To determine the length of delay, it is necessary to
5  determine when the statute of limitations period should begin and, therefore, when Mexicana knew
6  or should have known about its cause of action. The parties dispute when the period of delay
7  should begin to be measured.

8  Whether Mexicana knew or should have known about potential claims under the Lanham
9  Act, 15 U.S.C. § 1114 (1), requires Mexicana, the trademark owner, to demonstrate "that the
10 alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive
11 consumers." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (citation and
12 internal quotation marks omitted). The similarity of marks alone has not been sufficient for a court
13 to find that consumer confusion is likely. *Brookfield Comm.*, 174 F.3d at 1055. It is likely that
14 consumer confusion will occur, "in light of the virtual identity of the marks, if they [are] used with
15 identical products or services." *Id.* at 1056. Therefore, Mexicana knowledge about its potential
16 cause of action, and, thus, the beginning of the limitations period, depends upon infringing
17 material on the vtp.com website likely to cause consumer confusion.

18 The moving party, Mexicana, has met its initial burden of showing no genuine issue of
19 material fact exists as to the delay. Mexicana produced evidence that it became aware of the
20 infringing travel-related content on the vtp.com website on December 1, 2007 — less than six
21 months before Mexicana initiated this action via the UDRP complaint. Goytortua Decl. ¶ 7. Thus
22 Mexicana has produced evidence that it knew or should have known about its causes of action on
23 that date. Mexicana further contends that Bigfoot has presented no evidence that the vtp.com
24 website had infringing content or that Mexicana knew or should have known of its causes of action
25 asserted in this lawsuit prior to December 1, 2007.

26 Bigfoot has not met its burden to produce evidence to create a genuine issue of material
27 fact with regards to Mexicana's alleged delay in bringing counterclaims for trademark
28 infringement. Bigfoot argues that Mexicana delayed in bringing its claims during the time in

1 | which NameMedia owned the vtp.com website. Pl. Opp. to Def.'s Motion, pp. 3-4. Bigfoot
2 | presents evidence only that Mexicana was aware of the existence of the vtp.com website before
3 | 2003 during NameMedia's ownership. However, Bigfoot falls short of producing evidence to
4 | show that Mexicana was aware of any infringing content on the vtp.com website prior to
5 | December 1, 2007, such that Mexicana knew or should have known about a cause of action under
6 | the Lanham Act. Therefore, Bigfoot has not met its burden to show a genuine issue of material
7 | fact exists with respect to Mexicana's alleged delay, and an analysis of the reasonableness of the
8 | delay is not necessary. Further, because Bigfoot has not met its burden as to the delay, the Court
9 | need not discuss whether Bigfoot has been prejudiced by the alleged delay.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Mexicana's motion for partial summary judgment as to Bigfoot's affirmative defenses of unclean hands, acquiescence, estoppel, fair use, and laches.

**IT IS SO ORDERED.**

DATED: July 23, 2010

_____
Hon. Roger T. Benitez
United States District Judge